Stephen Koteff, Alaska Bar No. 9407070
Joshua A. Decker, Alaska Bar No. 1201001
ACLU OF ALASKA FOUNDATION
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
(907) 263-2007
*skoteff@acluak.org*

Kendri M. M. Cesar, Alaska Bar No. 1306040
SONOSKY, CHAMBERS, SACHSE, MILLER
 & MONKMAN, LLP
302 Gold Street, Suite 201
Juneau, AK 99801
(907) 586-5880
*kendri@sonosky.net*

Stephen L. Pevar
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
765 Asylum Avenue
Hartford, CT 06105
(860) 570-9830
*spevar@aclu.org*

Mark J. Carter
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
(646) 885-8344
*mcarter@aclu.org*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **Clarice Leota Hardy**, | No. |
| Plaintiff, | |
| v. | |

*Hardy v. City of Nome*
COMPLAINT
Case No._____        Page 1 of 31

Case 2:20-cv-00001-HRH   Document 1   Filed 02/20/20   Page 1 of 31

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

**City of Nome, and John Papasodora and Nicholas Harvey in their individual capacities**,

Defendants.

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES

### JURY TRIAL DEMANDED

## Introduction

1.      Plaintiff Clarice Hardy is an Alaska Native woman from Nome, Alaska, who worked at the Nome Police Department (NPD) as a dispatcher. In March 2017, Ms. Hardy reported to her superiors at the NPD that she had been sexually assaulted.

2.      The NPD left her case uninvestigated and untouched for over a year, and valuable evidence was lost because of the delay. When an investigation was finally concluded, more than eighteen months after Ms. Hardy's initial report, Ms. Hardy's assailant was not charged or otherwise brought to justice.

3.      The failure and refusal of the City of Nome and the NPD to properly investigate Ms. Hardy's allegations of sexual assault are part of the city's systemic and ongoing failure to protect Alaska Native women from sexual abuse and assault.

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

4.      Ms. Hardy now brings this case to vindicate her constitutional right to equal protection of the law, and to vindicate the rights of all other Alaska Native women in Nome who no longer feel secure in their community because of the City of Nome's egregious indifference toward their safety.

## Jurisdiction and Venue

5.      This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution. This action is also brought to enforce rights established in the Constitution of the State of Alaska, and state statutory and common law rights.

6.      Jurisdiction is proper in the United States District Court for the District of Alaska – Nome Division under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7.      Venue is proper in the Nome Division of the District of Alaska as the events giving rise to the cause of action in this lawsuit occurred within the District of Alaska and within the Nome Division. Therefore, venue is appropriate in this judicial district under 28 U.S.C. § 1391.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                      Page 3 of 31

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

8.      Venue is proper for the individual defendants John Papasodora and Nicholas Harvey under 28 U.S.C. § 1391 because they committed violations under color of law, acts, or omissions in this district of the United States District Court.

## Parties

9.      Plaintiff Clarice Leota Hardy is an Alaska Native woman currently residing in Shaktoolik, Alaska. Ms. Hardy was employed by the City of Nome, NPD , from 2015 to 2018.

10.      Defendant City of Nome is a municipality incorporated under the laws of the State of Alaska and is located in western Alaska. The powers of the City of Nome are vested in a city council consisting of six council members and one mayor, and in a city manager who supervises the enforcement of municipal law, carries out the directives of the city council, and is responsible for the supervision of all other city employees. The City of Nome was the public employer of Ms. Hardy and is or was the public employer of the individually named Defendants. The City of Nome is responsible for the maintenance, control, and supervision of the NPD and for establishing policies, procedures, and customs by which its employees conduct their official duties, including the duties that form the basis of this action. The NPD

*Hardy v. City of Nome*
COMPLAINT
Case No._____

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

is a department of the City of Nome created for the enforcement of law and order and the protection of life and property.

11.     Defendant John Papasodora, sued in his individual capacity, was at all relevant times Chief of Police of the NPD and was responsible for the maintenance, control, training, conduct, and supervision of law enforcement personnel employed by the NPD, and for adopting and enforcing the law enforcement policies and practices of the City of Nome, including the policies and practices complained of herein.

12.     Defendant Nicholas Harvey, sued in his individual capacity, was at all relevant times a Lieutenant with the NPD. Defendant Harvey was the deputy executive head of the department, authorized to assume the duties of Chief of Police in the chief's absence, and to supervise and assign various duties to all other police department personnel.

## Factual Statement

### The City of Nome's Custom or Practice of Failing to Investigate Sexual Assault Claims

13.     The City of Nome is located on the edge of Norton Sound in western Alaska, unconnected to major road systems, and accessible to the rest of Alaska only by air or by sea.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                          Page 5 of 31

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

14.     Most recent estimates indicate that Nome has approximately 3,866 residents, 58 percent of whom are Alaska Native. The vast majority of Nome's government, including the mayor, city manager, city council members, and police chief are, and have historically been, non-Native and typically Caucasian.

15.     Since at least 2008, the number of women in Nome who have reported to the NPD of being sexually assaulted has been substantially higher than the national average. For at least a decade, more than six times more sexual assaults have been reported in Nome than in the rest of the country.

16.     Adding to this disparity, only about 10 percent of the reported sexual assaults in Nome resulted in arrest over this same period. This is only half the percentage of arrests made nationwide.

17.     The low number of arrests for reports of sexual assault in Nome is not a statistical anomaly. The fact that so few people are arrested and held accountable for sexual assault in Nome is a direct result of a persistent pattern of indifference toward and disregard for the safety of Alaska Native women by the NPD.

18.     For years, sexual assault reports made to NPD by Alaska Native women have been ignored or dismissed, with little to no

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                              Page 6 of 31

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel.: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

investigation conducted. When investigations have occurred, they typically were done in a shoddy manner resulting in a lack of sufficient evidence needed to prosecute the case.

19.    These failures to investigate and to take Alaska Native women seriously occurred largely under the authority of Chief of Police John Papasodora. Chief Papasodora was aware of these failures and ratified his staff's persistent practice of inadequately responding to sexual assault reports and allowed it to continue.

20.    In September 2018, Robert Estes replaced Papasodora as the police chief. Soon after he assumed his position, Chief Estes initiated an audit of the NPD's earlier handling of sexual assault cases.

21.    Among other things, the audit found that 76 out of the 182 reports of sexual assault made to NPD between 2015 to 2018 were inadequately investigated.

22.    Of those sexual assault cases that were inadequately investigated, the vast majority—over 90 percent—were filed by Alaska Native women.

23.    Lieutenant Nicholas Harvey was responsible for many of the cases that were found to have been inadequately investigated. In some of those cases, Lt. Harvey conducted no investigation at all.

*Hardy v. City of Nome*
COMPLAINT
Case No._____

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

24. Chief Papasodora was aware that Lt. Harvey had failed to adequately investigate large numbers of sexual assault reports but took no action to correct those failures or to discipline Lt. Harvey for his malfeasance.

25. The NPD's failure to properly investigate sexual assault cases has been motivated at least in part by Lt. Harvey's and Chief Papasodora's animus toward women and Alaska Natives.

26. Lt. Harvey's animus toward women has been demonstrated in his reference to women, particularly Alaska Native women, as "cunts." Lt. Harvey also frequently treated women who had complained of being sexually assaulted with disdain. In at least one instance, Lt. Harvey attempted to cancel the forensic examination of a woman who reported being sexually assaulted merely because the male suspect had told him that the sex was consensual. In another circumstance, Lt. Harvey expressed reluctance to pursue a sexual assault report because it was a "he said, she said" situation that could not be proven.

27. On other occasions, Lt. Harvey has made derogatory comments about Alaska Native women, suggesting that their reports of being sexually assaulted are unfounded.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                      Page 8 of 31

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

28.     Chief Papasodora's animus was evident in the frequent derogatory comments and jokes about Alaska Natives he made in the workplace. Chief Papasodora also exhibited his contempt in public meetings where he made demeaning comments about women and Alaska Natives who were the victims of crime. On one particular occasion while on duty, Chief Papasodora refused to render assistance to an Alaska Native person who was incapacitated and lying on the ground in sub-zero temperatures.

29.     Another reason that NPD investigations of sexual assault were conducted so poorly—or not at all—is the City of Nome's historic failure and refusal to adequately train law enforcement personnel.

30.     The 2019 internal audit conducted by NPD found that the City of Nome and NPD had failed to provide police officers with adequate training on the collection and preservation of evidence and writing reports.

31.     As one example of NPD's failure to adequately train its law enforcement personnel, prior to 2018, no NPD police officer received Sexual Assault Response Team (SART) training, despite the fact that SART training for law enforcement personnel is a recognized standard

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                    Page 9 of 31

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

for police departments across the country and despite the fact that sexual assaults occur frequently in Nome.

32.     The NPD's failure to train its police officers was the result of a conscious effort not to do so. In a June 25, 2018 resolution, the City of Nome acknowledged that, "in the past, it has avoided the pursuit of grant-funded training and staffing opportunities, which is a practice that can no longer continue in today's climate."

33.     The NPD's repeated failures to adequately investigate reports of sexual assault were so widespread and systemic that they became a de facto custom and practice of the City of Nome and the NPD.

34.     Knowledge of these failures was not limited to Chief Papasodora or others within the NPD. In December 2017, then-City Manager Thomas Moran was informed by outgoing NPD Sergeant Preston Stotts that Lt. Harvey and other NPD officers "regularly failed" to respond to sexual assaults as well as other felony calls. Moran took no corrective action in response to Stotts's report.

35.     Moran admitted later, in September 2018, that he and Chief Papasodora "were both remiss in ensuring that day-to-day tasks

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                      Page 10 of 31

[at the NPD] were being done, and we both take accountability for that."

36.     The City of Nome was also well enough aware of the NPD's failure to investigate reports of sexual assault by Alaska Native women that in November 2018 it asked the U.S. Department of Justice to conduct an investigation pursuant to 42 U.S.C. § 14141 "to determine if there have been civil rights violations by the NPD in regards to sexual assault and violent crime investigations . . . ."

37.     Despite these apparent concerns, the City of Nome's actions have continued to show a deliberate indifference to the civil rights of Alaska Native women.

38.     In an October 7, 2019, meeting, Chief Estes informed the City Council that NPD needed more resources to conduct adequate investigation of its cases. He also informed the City Council that twenty of the cases identified in his internal NPD audit as inadequately investigated still required further work, but that they remained "cold cases for now" because the NPD did not have the personnel to finish the job.

39.     The City rejected Chief Estes's request for additional resources. Chief Estes resigned from the NPD the following day.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel.: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

## The NPD's Failure to Investigate Clarice Hardy's Sexual Assault Claim

40. On May 27, 2015, the NPD hired Ms. Hardy to work as a dispatcher. As part of her job duties, Ms. Hardy took calls from the public reporting crimes, disturbances, fires, and medical or police emergencies, and relayed this information to her law enforcement colleagues in the NPD or to other emergency response personnel.

41. One early morning in mid-March 2017, Ms. Hardy was sexually assaulted in her apartment by Donald Johnson, who had accompanied her home after they were socializing at a local bar the night before.

42. Ms. Hardy had no memory of leaving the bar or of how she arrived at her apartment, but she remembered she had been feeling "woozy" while at the bar. Ms. Hardy believes she had been drugged.

43. Ms. Hardy had no recollection of the sexual assault until late the following day when friends told her they had seen a video of the assault posted on Snapchat.

44. Apparently, Mr. Johnson's girlfriend had tracked him down, forced her way into Ms. Hardy's apartment bedroom, and had an accomplice record the events with a phone camera as she confronted

Mr. Johnson, all while Ms. Hardy remained motionless and unresponsive on her bed.

45.     Shortly after the assault, Ms. Hardy reported the incident to her coworker at the NPD, then-Lieutenant Nick Harvey. Lt. Harvey asked Ms. Hardy to compile a written report of the incident. In her report, Ms. Hardy described the events recounted above and identified the witnesses who she believed had seen the video.

46.     Lt. Harvey assured Ms. Hardy that he would begin an investigation right away. Lt. Harvey told Ms. Hardy that he would start the investigation by obtaining a "Glass" warrant, by talking to witnesses, and by securing the video of the incident that Ms. Hardy had described.

47.     Based on these assurances, Ms. Hardy believed that Lt. Harvey had initiated an investigation into her complaint.

48.     Approximately one month after she first reported the assault to Lt. Harvey, Ms. Hardy asked him about the status of the case.

49.     Lt. Harvey told Ms. Hardy that he was working on the investigation. Ms. Hardy trusted what Lt. Harvey told her and did not question him further at that time.

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

50.     Sometime in July 2017, Ms. Hardy again asked Lt. Harvey about the status of the investigation into her complaint. Ms. Hardy asked Lt. Harvey if he was able to get the video of the assault that she told him about.

51.     Lt. Harvey told Ms. Hardy that the "Glass" warrant was taking a little longer to obtain than he had anticipated, and that he had been busy working on another case. However, Lt. Harvey assured Ms. Hardy that he was working on the case, and that he would let her know if he needed any more information from her.

52.     Ms. Hardy believed what Lt. Harvey told her about the progress of the investigation because she regarded him as a trusted superior. She had worked under Lt. Harvey's supervision for more than two years, and thought, at the time, that he had been doing a good job. She thus had no reason to suspect that what Lt. Harvey told her about the progress of the investigation was not the truth.

53.     Ms. Hardy also knew that some investigations conducted by the NPD took a long time to be resolved. Ms. Hardy therefore did not ask Lt. Harvey about the status of the investigation for several more months, because she wanted to give him time to build the best case he could against her assailant.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                     Page 14 of 31

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

54.     In January 2018, Ms. Hardy still had not heard anything from Lt. Harvey about the case. On or about January 23, 2018, Ms. Hardy again asked Lt. Harvey about the status of her complaint.

55.     Lt. Harvey then told Ms. Hardy that the request for a "Glass" warrant had been denied. He also told her that he was unable to secure the video of the assault because Snapchat only saved videos for thirty days.

56.     Ms. Hardy reminded Lt. Harvey that she had identified witnesses who had seen the video. Lt. Harvey said nothing more, other than that he would let Ms. Hardy know if he needed additional information from her. Ms. Hardy, aware that some investigations required more time than others, continued to trust that Lt. Harvey was properly investigating her complaint.

57.     In mid-March 2018, while working her shift as a dispatcher at the NPD, Ms. Hardy answered a call from a man looking for help locating his son. The caller was Donald Johnson, the man who had sexually assaulted her. Ms. Hardy was shocked to be suddenly speaking to the man who she believed had raped her, but she was nevertheless able to maintain her composure and assist Mr. Johnson.

When she ended the call, however, she broke down and began to cry uncontrollably at her desk.

58.     Joseph Dickerson, a NPD sergeant, saw Ms. Hardy in distress and asked her what was wrong. Ms. Hardy told Sgt. Dickerson about the sexual assault and Mr. Johnson's call, about having reported the assault to Lt. Harvey, and that she had been waiting for a year for something to happen and nothing had yet been done.

59.     Sgt. Dickerson immediately summoned Chief Papasodora to the dispatch room. Ms. Hardy then recounted for Chief Papasodora all that she had told Sgt. Dickerson and of the times she had been assured by Lt. Harvey that he was working on her complaint.

60.     Chief Papasodora searched NPD's electronic database but could not find a record of Ms. Hardy's complaint. Chief Papasodora told Ms. Hardy that he would speak with Lt. Harvey and have him apprise him of the status of the investigation.

61.     Later the same day, Chief Papasodora told Ms. Hardy that she would need to submit another written report about the sexual assault. At this point it became obvious to Ms. Hardy that Lt. Harvey had not taken any action at all in response to her complaint and that

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

he had lied to and misled her about the status of the investigation each time she had asked him about it.

62.    On March 27, 2018, Ms. Hardy completed a new written report detailing how she was sexually assaulted in March 2017 and gave it to Chief Papasodora. The chief told her that, under the circumstances, he believed her complaint should be investigated by the Alaska State Troopers (AST). Chief Papasodora said he would forward her complaint to the AST immediately to request that an investigation be initiated right away.

63.    Chief Papasodora also told Ms. Hardy that he was going to ask AST to investigate why Lt. Harvey took no action in response to her complaint. At no time after this, however, did Chief Papasodora inform Ms. Hardy of the status of any inquiry into Lt. Harvey's failure to investigate her claims.

64.    In early May 2018, Ms. Hardy contacted AST to ask about the status of her complaint. Ms. Hardy was told that AST had no record of a complaint from her.

65.    Ms. Hardy then inquired of Chief Papasodora about whether he had forwarded her complaint to AST. Chief Papasodora told

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

Ms. Hardy that he "had been meaning to get to it," but that he had not yet taken any action on the complaint.

66. Only because of her direct contact with AST did AST initiate an investigation into Ms. Hardy's claim of being sexually assaulted, now almost fourteen months after she first reported the crime to Lt. Harvey.

67. The realization that Lt. Harvey had taken no action at all in response to her complaint, and that he had repeatedly lied to her over a one-year period about the status of the case, left Ms. Hardy emotionally devastated. Her feeling of devastation was significantly compounded when she learned that Chief Papasodora, like Lt. Harvey before him, had done nothing in response to her complaint despite his assurances. Ms. Hardy became overwhelmed by feelings of betrayal and mistrust towards people she considered almost like family.

68. Furthermore, working under Lt. Harvey became increasingly uncomfortable for Ms. Hardy after Lt. Harvey learned that she had complained about his failure to investigate her complaint. Lt. Harvey began to retaliate against Ms. Hardy by ignoring her at work, leading her to feel isolated and afraid of further retaliation for having exposed his misfeasance.

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@aclualaska.org*

69.     On May 24, 2018, Ms. Hardy was close to finishing her shift at the NPD when Lt. Harvey arrived at the NPD station. Lt. Harvey had been attending a meeting at which several Alaska Native women voiced their concerns about the NPD's failure to protect them from sexual assaults. Lt. Harvey sat down in a chair near Ms. Hardy, assumed an aggressive posture, and had what Ms. Hardy interpreted as a menacing look on his face. Lt. Harvey then told Ms. Hardy that he had "just got done dealing with those cunts" who were complaining about the police department.

70.     Ms. Hardy was shocked and confused by what Lt. Harvey said. But more than anything, Ms. Hardy felt intimidated and scared to know that Lt. Harvey harbored such animus against women who, like her, sought protection and accountability from the police department.

71.     Ms. Hardy felt she could not work under the current circumstances and asked Chief Papasodora for temporary administrative leave while Lt. Harvey's failure to investigate her complaint was being investigated. The chief granted her leave, which began on May 28, 2018.

72.     Approximately one week after her administrative leave began, Ms. Hardy was told by Dana Handeland, who worked in the

*Hardy v. City of Nome*
Complaint
Case No._____                                         Page 19 of 31

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

city's personnel department, that city manager Thomas Moran was cancelling her administrative leave because he believed the NPD was too short-staffed and Ms. Hardy was needed at work.

73.     Ms. Hardy, however, had begun seeing a counselor and a psychiatrist for the exacerbated trauma she suffered as a result of having her complaint not taken seriously by her superiors, including persistent nightmares, flashbacks, and panic attacks. Ms. Hardy was diagnosed with severe post-traumatic stress disorder (PTSD). Even the thought of returning to work was panic-inducing.

74.     Ms. Hardy informed Ms. Handeland that she was receiving mental health treatment and that both of her providers had advised her not to return to work until her health improved.

75.     The City recognized that Ms. Hardy was entitled to leave under the Family Medical Leave Act (FMLA) and the Alaska Family Leave Act (AFLA), and granted her leave for a "serious medical condition."

76.     Ms. Hardy's condition did not improve throughout the summer or fall of 2018. She continued to suffer severe PTSD symptoms and had to grapple with the reality that the system of which she was a part and had placed her faith in had failed her so egregiously. To make

*Hardy v. City of Nome*
COMPLAINT
Case No._____

matters worse, the medication Ms. Hardy was taking to alleviate some of her more severe symptoms negatively impacted her ability to concentrate and perform complex tasks, making her return to work even more uncertain because she was unable to perform some of the essential functions of her job.

77.     On October 6, 2018, all of the leave to which Ms. Hardy was entitled under both the FMLA and the AFLA was exhausted. On October 7, 2018, the City of Nome terminated Ms. Hardy's employment because she remained unable to return to work.

78.     Ms. Hardy continues to suffer from debilitating symptoms of PTSD and remains unable to work.

## Count I
### Deprivation of Equal Protection Guaranteed by the Fourteenth Amendment to the United States Constitution

79.     The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

80.     Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on race or sex is presumptively unconstitutional and subject to heightened scrutiny.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

81.     As such, the Equal Protection Clause prohibits law enforcement agencies or officers from providing services in a discriminatory manner because of a person's race or sex.

82.     A law enforcement agency's or officer's failure to investigate reported crimes because of the victim's race or sex violates the Equal Protection Clause.

83.     Defendants failed to investigate Ms. Hardy's reported sexual assault because Ms. Hardy is an Alaska Native and a woman.

84.     Defendants' failure to investigate Ms. Hardy's reported sexual assault was part of a widespread practice that was so permanent and well settled that it constituted a custom or practice of the NPD, by and through Defendant Papasodora, and Defendant City of Nome.

85.     Defendants' failure to investigate Ms. Hardy's reported sexual assault was the result of Defendant City of Nome's failure to train its law enforcement personnel to conduct sexual assault investigations in the face of obvious need for such training and to properly supervise them, resulting in deliberate indifference to Ms. Hardy's rights.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                    Page 22 of 31

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel.: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

86.    Defendants' failure to investigate Ms. Hardy's reported sexual assault deprived Ms. Hardy of her right to equal protection under the Fourteenth Amendment to the United States Constitution.

87.    The deprivation of her right to equal protection has caused Ms. Hardy harm.

**Count II**
**Deprivation of Equal Protection Guaranteed by Article I § 1 of the Alaska Constitution**

88.    Article I § 1 of the Alaska Constitution provides that all persons are equal and entitled to equal rights, opportunities, and protection under the law.

89.    Under Article I § 1 of the Alaska Constitution, discrimination based on race or sex is presumptively unconstitutional and subject to strict scrutiny.

90.    As such, Article I § 1 prohibits law enforcement agencies or officers from providing services in a discriminatory manner because of a person's race or sex.

91.    A law enforcement agency's or officer's failure to investigate reported crimes because of the victim's race or sex violates Article I § 1 of the Alaska Constitution.

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

92. Defendants failed to investigate Ms. Hardy's reported sexual assault because Ms. Hardy is an Alaska Native and a woman.

93. Defendants' failure to investigate Ms. Hardy's reported sexual assault deprived Ms. Hardy of her right to equal protection under Article I § 1 of the Alaska Constitution.

94. The deprivation of her right to equal protection has caused Ms. Hardy harm.

## Count III
## Discrimination in the Provision of Government Services
## A Violation of AS 18.80.255

95. Alaska Statute 18.80.255 makes it unlawful for a political subdivision to withhold from or deny to a person local governmental services, advantages, or privileges because of race or sex.

96. A law enforcement agency's or officer's failure to investigate reported crimes because of the victim's race or sex violates AS 18.80.255.

97. Defendants failed to investigate Ms. Hardy's reported sexual assault because Ms. Hardy is an Alaska Native and a woman.

98. Defendants' failure to investigate Ms. Hardy's reported sexual assault was part of Defendants' practice or policy of failing to

*Hardy v. City of Nome*
COMPLAINT
Case No._____

adequately investigate reports of sexual assaults from Alaska Native women.

99.    Defendants' failure to investigate Ms. Hardy's reported sexual assault constitutes a violation of AS 18.80.255.

100.    Defendants' violation of AS 18.80.255 has caused Ms. Hardy harm, and has caused harm to other Alaska Native women in Nome whose reports of sexual assault have been inadequately investigated.

**Count IV**
**Hostile Work Environment and Constructive Discharge**
**Employment Discrimination Based on Race and Sex**
**A Violation of Alaska Statute 18.80.220**

101.    Alaska Statute 18.80.220 makes it unlawful for an employer to discriminate against a person because of their race or sex in a term, condition, or privilege of employment.

102.    An employer discriminates against an employee in a term or condition of their employment when it creates or tolerates a hostile working environment for the employee.

103.    Defendants failed to investigate Ms. Hardy's reported sexual assault because Ms. Hardy is an Alaska Native and a woman.

104.    Defendants subjected Ms. Hardy to a hostile work environment by failing to investigate her reported sexual assault.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

105.    Defendants further subjected Ms. Hardy to a hostile work environment when Lt. Harvey retaliated against Ms. Hardy for revealing his failure to investigate her report of sexual assault.

106.    Constructive discharge occurs where an employer makes working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

107.    By failing to investigate Ms. Hardy's reported sexual assault, and by retaliating against her after she revealed Lt. Harvey's failure to investigate her report of sexual assault, Defendants made working conditions so intolerable for Ms. Hardy that she reasonably felt compelled to resign.

108.    Defendants violated AS 18.80.220 when they subjected Ms. Hardy to a hostile work environment and constructively discharged her.

109.    Defendants' violation of AS 18.80.220 has caused Ms. Hardy harm.

## Count V
### Hostile Work Environment and Constructive Discharge
### A Violation of the Implied Covenant of Good Faith and Fair Dealing

110.    Every at-will employment contract in Alaska is subject to the implied covenant of good faith and fair dealing.

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                                    Page 26 of 31

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

111.   The implied covenant of good faith and fair dealing has two components, a subjective component and an objective component.  If an employer breaches either component, the employer breaches the implied covenant.

112.   An employer breaches the subjective component of the implied covenant of good faith and fair dealing when it terminates an employee's employment and the termination decision is motivated by an improper or impermissible objective.

113.   An employer breaches the objective component of the covenant of good faith and fair dealing if it treats an employee in a manner that a reasonable person would regard as unfair.

114.   Defendants unreasonably failed to investigate Ms. Hardy's reported sexual assault.

115.   Defendants, through Lt. Harvey, intentionally misrepresented to Ms. Hardy that her reported sexual assault was being investigated when Lt. Harvey knew it was not being investigated. Further, Chief Papasodora breached the covenant of good faith and fair dealing when he compounded Lt. Harvey's misconduct by not promptly investigating Ms. Hardy's complaint.

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel.: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

116.   Defendants' unreasonable failure to investigate Ms. Hardy's report of sexual assault, and intentional misrepresentation that her report was being investigated, when it was not, was fundamentally unfair and created working conditions so intolerable that Ms. Hardy was reasonably compelled to resign.

117.   Defendants breached the implied covenant of good faith and fair dealing by creating working conditions so intolerable that Ms. Hardy was compelled to resign.

118.   As a result of Defendants' breach, Ms. Hardy has suffered harm.

## Count VI
## Intentional Infliction of Emotional Distress

119.   A person is liable to another person for intentional infliction of emotional distress if its conduct is extreme and outrageous, the conduct was intentional or reckless, the conduct caused and causes emotional distress, and the distress is severe.

120.   Defendants' failure to investigate Ms. Hardy's reported sexual assault for more than fourteen months, including Lt. Harvey's repeated misrepresentations to Ms. Hardy that he was investigating her report when he was not and Chief Papasodora's inaction in the face of a clear duty to act, constitutes extreme and outrageous conduct.

*Hardy v. City of Nome*
Complaint
Case No._____                                    Page 28 of 31

121. Defendants' failure to investigate Ms. Hardy's reported sexual assault for more than fourteen months, as well as Lt. Harvey's repeated misrepresentations to Ms. Hardy that he was investigating her report when he was not and Chief Papasodora's failure to take responsible corrective measures in a timely manner, was intentional or reckless.

122. Defendants' failures and misrepresentations caused and continue to cause Ms. Hardy severe emotional distress.

## Prayer for Relief

Accordingly, based on the foregoing, Plaintiff requests that this Court do the following:

1. Issue an injunction under AS 22.10.020(i) ordering Defendant City of Nome to cease any discriminatory practices in the provision of law enforcement services and to take steps to ensure that all reports of sexual assault are investigated thoroughly without regard to the victim's race or gender;

2. Issue an injunction under AS 22.10.020(i) ordering Defendant City of Nome to adequately train all of its appropriate law enforcement personnel to conduct sexual assault investigations in an effective and thorough manner;

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

3. Award Plaintiff compensatory damages in an amount the proof will show, and punitive damages under 42 U.S.C. § 1983;

4. Award Plaintiff back pay, front pay, and compensatory and punitive damages for her state law claims;

5. Award Plaintiff her costs, expenses, and reasonable attorney fees under 42 U.S.C. § 1988 and other applicable laws;

6. Award such other relief as this Court may deem just and equitable.

Dated February 20, 2020.

_/s/ Stephen Koteff_
Stephen Koteff, Bar No. 9407070
Joshua A. Decker, Bar No. 1201001
ACLU OF ALASKA FOUNDATION

Kendri M. M. Cesar, Bar No. 1306040
SONOSKY, CHAMBERS, SACHSE, MILLER & MONKMAN, LLP

Stephen L. Pevar
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Mark J. Carter
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: _legal@acluak.org_

*Hardy v. City of Nome*
COMPLAINT
Case No._____                                          Page 30 of 31

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated February 20, 2020.

*/s/ Stephen Koteff*
Stephen Koteff, Bar No. 9407070
Joshua A. Decker, Bar No. 1201001
ACLU OF ALASKA FOUNDATION

Kendri M. M. Cesar, Bar No. 1306040
SONOSKY, CHAMBERS, SACHSE, MILLER & MONKMAN, LLP

Stephen L. Pevar
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Mark J. Carter
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*