IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CLARICE LEOTA HARDY,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　 )
　　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
CITY OF NOME, et al.,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)　　No. 2:20-cv-0001-HRH
　　　　　　　　　　　　Defendants.　　)
_____)

O R D E R

Motion to Dismiss

Defendant Nicholas Harvey moves to dismiss plaintiff Clarice Leota Hardy's claims against him.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff alleges that she "was employed by the City of Nome, NPD, [Nome Police Department] from 2015 to 2018."[3] Harvey is alleged to have been "a Lieutenant with the NPD."[4]

---

[1]Docket No. 35.

[2]Docket No. 41.

[3]Complaint [etc.] at 4, ¶ 9, Docket No. 1.

[4]Id. at 5, ¶ 12.

Plaintiff alleges that "in mid-March 2017, [she] was sexually assaulted in her apartment by Donald Johnson[.]"[5] Plaintiff alleges that while she "had no recollection of the sexual assault[,] friends told her they had seen a video of the assault posted on Snapchat[,]"[6] which had allegedly been taken by a friend of Johnson's girlfriend.[7]

Plaintiff alleges that "[s]hortly after the assault, [she] reported the incident to her coworker at the NPD, then-Lieutenant Nick Harvey. Lt. Harvey asked [plaintiff] to compile a written report of the incident."[8] Plaintiff alleges she wrote a report and that "Harvey assured [her] that he would begin an investigation right away."[9] Plaintiff alleges that Harvey told her that "he would start the investigation by obtaining a 'Glass' warrant, by talking to witnesses, and by securing the video of the incident. . . ."[10] Plaintiff alleges that "[b]ased on these assurances, [she] believed that Lt. Harvey had initiated an investigation into her complaint."[11]

Plaintiff alleges that "[a]pproximately one month after she first reported the assault to Lt. Harvey, [she] asked him about the status of the case" and he told her "that he was

---

[5] Id. at 12, ¶ 41.

[6] Id. at 12, ¶ 43.

[7] Id. at 12-13, ¶ 44.

[8] Id. at 13, ¶ 45.

[9] Id. at 13, ¶¶ 45-46.

[10] Id. at 13, ¶ 46.

[11] Id. at 13, ¶ 47.

working on the investigation."[12] Plaintiff alleges that she "trusted what Lt. Harvey told her and did not question him further at that time."[13]

Plaintiff alleges that she "asked Lt. Harvey about the status of the investigation" again in July 2017.[14] Plaintiff alleges that Harvey told her "that the 'Glass' warrant was taking a little longer to obtain than he had anticipated, and that he had been busy working on another case" but that he "assured [her] that he was working on [her] case[.]"[15] Plaintiff alleges that she

> believed what Lt. Harvey told her about the progress of the investigation because she regarded him as a trusted superior. She had worked under [his] supervision for more than two years, and thought, at the time, that he had been doing a good job. She thus had no reason to suspect that what Lt. Harvey told her about the progress of the investigation was not the truth.[[16]]

Plaintiff alleges that "[o]n or about January 23, 2018, [she] again asked Lt. Harvey about the status of her complaint."[17] Plaintiff alleges that Harvey told her that the request for a "Glass" warrant had been denied and he had not been able "to secure the video of the

---

[12]Id. at 13, ¶¶ 48-49.

[13]Id. at 13, ¶ 49.

[14]Id. at 14, ¶ 50.

[15]Id. at 14, ¶ 51.

[16]Id. at 14, ¶ 52.

[17]Id. at 15, ¶ 54.

assault because Snapchat only saved videos for thirty days."[18] Plaintiff alleges that she "reminded Lt. Harvey that she had identified witnesses who had seen the video" and that Harvey's response was "that he would let [her] know if he needed additional information from her."[19] Plaintiff alleges that because she was "aware that some investigations required more time than others," she "continued to trust that Lt. Harvey was properly investigating her complaint."[20]

Plaintiff alleges that in mid-March 2018, after she received a dispatch call from Johnson, she was upset and crying at her desk and "Joseph Dickerson, a NPD sergeant, . . . asked her what was wrong."[21] Plaintiff alleges that she told "Dickerson about the sexual assault and Mr. Johnson's call, about having reported the assault to Lt. Harvey, and that she had been waiting a year for something to happen and nothing had yet been done."[22] Plaintiff alleges that "Sgt. Dickerson immediately summoned Chief Papasodora" and that she "then recounted to Chief Papasodora all that she had told Sgt. Dickerson and of the times she had been assured by Lt. Harvey that he was working on her complaint."[23] Plaintiff alleges that

---

[18] Id. at 15, ¶ 55.

[19] Id. at 15, ¶ 56.

[20] Id.

[21] Id. at 15-16, ¶¶ 57-58.

[22] Id. at 16, ¶ 58.

[23] Id. at 16, ¶ 59.

-4-

"Chief Papasodora searched NPD's electronic database but could not find a record of [plaintiff's] complaint. Chief Papasodora told [plaintiff] that he would speak to Lt. Harvey and have him apprise him of the status of the investigation."[24] Plaintiff alleges that it was at this point that she realized that Harvey "had not taken any action at all in response to her complaint and that he had lied to and misled her about the status of the investigation each time she had asked him about it."[25]

Plaintiff alleges that it "became increasingly uncomfortable for" her to work around Harvey after he "learned that she had complained about his failure to investigate her complaint."[26] Plaintiff alleges that Harvey "began to retaliate against [her] by ignoring her work, leading her to feel isolated and afraid of further retaliation for having exposed Lt. Harvey's misfeasance."[27] Plaintiff alleges that on May 24, 2018, Harvey "arrived at the NPD station" after "attending a meeting at which several Alaska Native women voiced their concerns about the NPD's failure to protect them from sexual assaults."[28] Plaintiff alleges that Harvey made some comments about the meeting and that based on his comments, she "felt intimidated and scared to know that Lt. Harvey harbored such animus against women

---

[24] Id. at 16, ¶ 60.

[25] Id. at 16-17, ¶ 61.

[26] Id. at 18, ¶ 68.

[27] Id.

[28] Id. at 19, ¶ 69.

who, like her, sought protection and accountability from the police department."[29] Plaintiff alleges that she "felt she could not work under the current circumstances and asked Chief Papasodora for temporary administrative leave while Lt. Harvey's failure to investigate her complaint was being investigated."[30] Plaintiff alleges that her request for leave was granted and that the leave "began on May 28, 2018."[31]

Plaintiff alleges that she began seeing a counselor and "was diagnosed with severe post-traumatic stress disorder (PTSD)."[32] Plaintiff alleges that she was eventually granted leave under the Family Medical Leave Act and the Alaska Family Leave Act but that as of October 6, 2018, she had exhausted all of this leave.[33] Plaintiff alleges that the City of Nome thus terminated her employment on October 7, 2018.[34]

Plaintiff commenced this action on February 20, 2020. Plaintiff's complaint contains six counts. In Count I, plaintiff asserts a § 1983 equal protection claim. In Count II, plaintiff asserts a state law equal protection claim. In Count III, plaintiff asserts a state law discrimination claim pursuant to AS 18.80.255. In Count IV, plaintiff asserts a state law

---

[29]Id. at 19, ¶¶ 69-70.

[30]Id. at 19, ¶ 71.

[31]Id.

[32]Id. at 20, ¶ 73.

[33]Id. at 20, ¶ 75; 21, ¶ 77.

[34]Id. at 21, ¶ 77.

hostile work environment claim and a state law constructive discharge claim. In Count V, plaintiff asserts a breach of the implied covenant of good faith and fair dealing claim. In Count VI, plaintiff asserts an intentional infliction of emotional distress claim. All of these claims are asserted against Harvey, who is being sued in his individual capacity.[35]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Harvey now moves to dismiss all claims asserted against him.

## Discussion

"'A Rule 12(b)(6) motion must be made before the responsive pleading.'" MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006) (quoting Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004)). Here, although they were filed on the same day, Harvey "filed [his] motion to dismiss after filing [his] answer.'" Id. (quoting Elvig, 375 F.3d at 954). Thus, the instant motion must be "treated as a motion for judgment on the pleadings, pursuant to Rule 12(c). . . .'" Id. (quoting Elvig, 375 F.3d at 954). "A Rule 12(c) motion for judgment on the pleadings is the functional equivalent of a Rule 12(b)(6) motion to dismiss for failure to state a claim[.]" Forsman v. United Financial Cas. Co., 966 F. Supp. 2d 1091, 1096 (D. Mont. 2013). "The [c]ourt inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" Harris v. County of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The [c]ourt may find a

---

[35]Id. at 5, ¶ 12.

claim plausible when a plaintiff pleads sufficient facts to allow the [c]ourt to draw a reasonable inference of misconduct, but the [c]ourt is not required 'to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Iqbal, 556 U.S. at 678).

As an initial matter, plaintiff argues that the instant motion should be denied because Harvey did not comply with the court's order on Rule 12(b) motions to dismiss.[36] This order requires that Rule 12(b) motions to dismiss "be accompanied by a certification indicating that the parties have conferred to determine whether an amendment could cure a deficient pleading, and have been unable to agree that the pleading is curable by a permissible amendment."[37] Plaintiff served a copy of this order on Harvey on March 5, 2020.[38]

Technically, the court's order on Rule 12(b) motions to dismiss has no application here because the instant motion must be treated as a Rule 12(c) motion, not a Rule 12(b) motion. But even if the Rule 12(b) order applied here, the court would not have denied the instant motion solely because Harvey failed to comply with that order. Rather, the court would have considered the merits of Harvey's motion to dismiss after reminding Harvey of his obligation to comply with the court's orders.

Turning then to the merits of the instant motion, Harvey first argues that plaintiff's § 1983 claim in Count I is barred by the statute of limitations. "A claim may be dismissed

---

[36]Docket No. 10.

[37]Id. at 1.

[38]Docket No. 15.

under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).

"'Section 1983 does not contain its own statute of limitations.'" Flynt v. Shimazu, 940 F.3d 457, 461 (9th Cir. 2019) (quoting Butler v. Nat'l Comm. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014)). "Instead, claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits." Id. Personal injury suits in Alaska are subject to a two-year statute of limitations. AS 09.10.070(a). Thus, plaintiff had to file her § 1983 claim within two years of its accrual. A cause of action under § 1983 accrues "when the plaintiff[] know[s] or ha[s] reason to know of the injury that is the basis of [her] action." RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002). A § 1983 claim accrues "not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" Bonneau v. Centennial School Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012) (quoting Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1050 (9th Cir. 2008)). In determining when a cause of action accrues, "[t]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981).

Harvey argues that plaintiff's § 1983 claim accrued on January 23, 2018. Harvey contends that plaintiff's alleged injury is that he did not investigate her sexual assault complaint and that, at the latest, this injury occurred on January 23, 2018. Harvey argues that the accrual date is not the date on which plaintiff may have learned that he had a discriminatory reason for not investigating her complaint, but rather the accrual date is the date she became aware of the actual injury. Lukovsky, 535 F.3d at 1049. Harvey insists that by January 23, 2018, plaintiff knew or should have known that he was not conducting an investigation into her alleged assault, as he had promised to do. It was on January 23, 2018 that plaintiff alleges that Harvey told her that his request for a "Glass" warrant had been denied and that he had not been able "to secure the video of the assault because Snapchat only saved videos for thirty days."[39] Thus, Harvey argues that by this date, plaintiff had enough information to know that he was not investigating her complaint, which means, according to Harvey, that the statute of limitations began to run on January 23, 2018. Because plaintiff did not file her complaint until February 20, 2020, which was more than two years after January 23, 2018, Harvey argues that her § 1983 claim is time barred.

It is plausible, however, that plaintiff's § 1983 claim did not accrue until mid-March 2018. Plaintiff has expressly alleged that it was not until then that she realized that Harvey had been lying to her and that he had not actually begun an investigation. It is plausible, based on the allegations in her complaint, that plaintiff was not aware that she had a § 1983

---

[39]Complaint [etc.] at 15, ¶ 55, Docket No. 1.

claim against Harvey until "Chief Papasodora searched NPD's electronic database but could not find a record of [plaintiff's] complaint[,]"[40] a search which occurred in mid-March 2018. Plaintiff expressly alleges that in January 2018, after Harvey told her that the request for a "Glass" warrant had been denied and that he was unable to obtain the video, she "continued to trust that Lt. Harvey was properly investigating her complaint."[41] While Harvey seems to be suggesting that it was not reasonable for plaintiff to believe at this point that he was in fact investigating her complaint, plaintiff has alleged that she trusted Harvey, in part because she considered Harvey to be "almost like family."[42] In other words, plaintiff has alleged why she continued to believe that Harvey was investigating her complaint even after he told her that the request for the "Glass" warrant had been denied and he had not obtained the video. Moreover, plaintiff has alleged that on January 23, 2018, she reminded Harvey about the witnesses she had identified and he responded "that he would let [her] know if he needed additional information from her[,]"[43] a response which suggested that Harvey was still working on the investigation. Because the court accepts plaintiff's allegations as true and draws all reasonable inferences in plaintiff's favor, the court concludes that it is plausible that plaintiff did not know or have reason to know that she had a § 1983 claim against

---

[40]Id. at 16, ¶ 60.

[41]Id. at 15, ¶ 56.

[42]Id. at 18, ¶ 67.

[43]Id. at 15, ¶ 56.

-11-

Harvey until mid-March 2018. If it is plausible that plaintiff's § 1983 claim did not accrue until mid-March 2018, then it is plausible that this claim is timely.

Harvey next argues that plaintiff's state law equal protection claim in Count II and her intentional infliction of emotional distress claim in Count VI are barred by the statute of limitations. In Alaska, "[a] person may not bring an action against a peace officer or coroner upon a liability incurred by the doing of an act in an official capacity or by the omission of an official duty . . . unless brought within two years." AS 09.10.070(b). Under Alaska law,

> the statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. Thus[,] the relevant inquiry is the date when the claimant reasonably should have known of the facts supporting her cause of action. [T]he court look[s] to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights.

Gefre v. Davis Wright Tremaine, LLP, 306 P.3d 1264, 1275 (Alaska 2013) (citation omitted). Harvey argues that plaintiff was on inquiry notice as of January 23, 2018 of the factual basis of her claims, which is that he was not investigating her alleged sexual assault as he had told her he was. Thus, he argues that her claims in Count II and Count VI are barred by the statute of limitations.

Harvey's argument that plaintiff's claims in Count II and Count VI are barred by the statute of limitations fails for the same reason this argument fails as to her § 1983 claim. It is plausible that these claims did not accrue until mid-March 2018, which is when plaintiff

-12-

has alleged that she had enough information to alert her that she had a potential cause of action against Harvey. Because it is plausible that plaintiff's claims in Count II and Count VI did not accrue until mid-March 2018, it is plausible that these claims are timely.

Harvey next argues that plaintiff's claim based on AS 18.80.255 in Count III is not plausible. AS 18.80.255(1) provides that "[i]t is unlawful for the state or any of its political subdivisions . . . to refuse, withhold from, or deny to a person any local, state, or federal funds, services, goods, facilities, advantages, or privileges because of race, religion, sex, color, or national origin[.]" Harvey argues that plainly this statute only applies to the state and its political subdivisions and that it cannot apply to a person such as himself who is being sued in his individual capacity. Harvey also argues that plaintiff's claims in Count IV and V are not plausible because such claims can only be asserted against an employer, and he was not plaintiff's employer. In Count IV, plaintiff asserts a state law hostile work environment claim and a state law constructive discharge claim. In Count V, plaintiff asserts a breach of the implied covenant of good faith and fair dealing claim.

In response, plaintiff contends that it is "clear" that the claims being asserted in Counts III, IV, and V "do not apply to, or seek relief from Harvey, and to the extent that there is any confusion, a simple amendment would suffice."[44] However, it is not at all "clear" that these claims were not being asserted against Harvey given that plaintiff repeatedly made

---

[44]Plaintiff's Opposition to Defendant Harvey's Motion to Dismiss at 2, Docket No. 41.

reference to "defendants" collectively in her allegations in these counts. What is clear is that these claims are not plausible as to Harvey. Thus, plaintiff's claims in Counts III, IV, and V against Harvey are dismissed. Plaintiff is not given leave to amend these claims as any amendment would be futile.

The court would also note that plaintiff has asserted the claims in Counts III, IV, and V against defendant Papasodora who, like Harvey, is being sued in his individual capacity.[45] It is the court's perception that these claims against Papasodora would also be subject to dismissal, and the court will entertain a stipulation or motion to clarify the status of the claims in Counts III, IV, and V as they pertain to defendant Papasodora.

## Conclusion

Harvey's motion to dismiss is granted in part and denied in part. The motion is denied as to plaintiff's claims against Harvey in Counts I, II, and VI. The motion is granted as to plaintiff's claims against Harvey in Counts III, IV, and V. These claims are dismissed without leave to amend.

DATED at Anchorage, Alaska, this 26th day of August, 2020.

/s/ H. Russel Holland
United States District Judge

---

[45]Complaint [etc.] at 5, ¶ 11, Docket No. 1.