WO             IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


CLARICE LEOTA HARDY,            )
                               )
                    Plaintiff, )
                               )
    vs.                        )
                               )
CITY OF NOME, et al.,          )
                               )    No. 2:20-cv-0001-HRH
                    Defendants. )
_____)


O R D E R

Motion for Leave to File Third-Party Complaint

Defendant John Papasodora moves for leave to file a third-party complaint.[1]  This

motion is opposed by plaintiff Clarice Leota Hardy.[2]  Oral argument was not requested and

is not deemed necessary.

Background

Plaintiff alleges that she "was employed by the City of Nome, NPD, [Nome Police

Department] from 2015 to 2018."[3]  Papasodora is alleged to have been, at all relevant times,

the "Chief of the NPD. . . ."[4]

_____

[1]Docket No. 46.

[2]Docket No. 47.

[3]Complaint [etc.] at 4, ¶ 9, Docket No. 1.

[4]Id. at 5, ¶ 11.

Plaintiff alleges that "in mid-March 2017, [she] was sexually assaulted in her apartment by Donald Johnson[.]"[5] Plaintiff alleges that while she "had no recollection of the sexual assault[,] friends told her they had seen a video of the assault posted on Snapchat[,]"[6] which had allegedly been taken by a friend of Johnson's girlfriend.[7]

Plaintiff alleges that "[s]hortly after the assault, [she] reported the incident to her coworker at the NPD, then-Lieutenant Nick Harvey."[8] Plaintiff alleges that "Harvey assured [her] that he would begin an investigation right away."[9] Plaintiff alleges that "[a]pproximately one month after she first reported the assault to Lt. Harvey, [she] asked him about the status of the case" and he told her "that he was working on the investigation."[10] Plaintiff alleges that she "asked Lt. Harvey about the status of the investigation" again in July 2017.[11] Plaintiff alleges that Harvey "assured [her] that he was working on [her] case[.]"[12] Plaintiff alleges that "[o]n or about January 23, 2018, [she] again asked Lt. Harvey about the

---

[5]Id. at 12, ¶ 41.

[6]Id. at 12, ¶ 43.

[7]Id. at 12-13, ¶ 44.

[8]Id. at 13, ¶ 45.

[9]Id. at 13, ¶ 46.

[10]Id. at 13, ¶¶ 48-49.

[11]Id. at 14, ¶ 50.

[12]Id. at 14, ¶ 51.

-2-

status of her complaint."[13]  Plaintiff alleges that she "reminded Lt. Harvey that she had

identified witnesses who had seen the video" and that Harvey's response was "that he would

let [her] know if he needed additional information from her."[14]  Plaintiff alleges that because

she was "aware that some investigations required more time than others," she "continued to

trust that Lt. Harvey was properly investigating her complaint."[15]

Plaintiff alleges that in mid-March 2018, after she received a dispatch call from

Johnson, she was upset and crying at her desk and "Joseph Dickerson, a NPD sergeant, . . .

asked her what was wrong."[16]  Plaintiff alleges that she told "Dickerson about the sexual

assault and Mr. Johnson's call, about having reported the assault to Lt. Harvey, and that she

had been waiting for a year for something to happen and nothing had yet been done."[17]

Plaintiff alleges that "Sgt. Dickerson immediately summoned Chief Papasodora" and that she

"then recounted to Chief Papasodora all that she had told Sgt. Dickerson and of the times she

had been assured by Lt. Harvey that he was working on her complaint."[18]  Plaintiff alleges

that "Chief Papasodora searched NPD's electronic database but could not find a record of

---

[13]Id. at 15, ¶ 54.

[14]Id. at 15, ¶ 56.

[15]Id. at 15, ¶ 56.

[16]Id. at 15-16, ¶¶ 57-58.

[17]Id. at 16, ¶ 58.

[18]Id. at 16, ¶ 59.

-3-

[her] complaint. Chief Papasodora told [plaintiff] that he would speak to Lt. Harvey and have him apprise him of the status of the investigation."[19] Plaintiff alleges that "Chief Papasodora told [her] that she would need to submit another written report about the sexual assault" and that she did so on March 27, 2018.[20] Plaintiff alleges that "Chief Papasodora said that he would forward her complaint to the [Alaska State Troopers ('AST')] immediately to request that an investigation be initiated right away."[21] Plaintiff alleges that "Chief Papasodora also told [her] that he was going to ask AST to investigate why Lt. Harvey took no action in response to her complaint."[22] Plaintiff alleges that she never heard anything from Chief Papasodora as to his investigation into Lt. Harvey's failure to investigate her report of a sexual assault and that when she contacted AST in May 2018, she "was told that AST had no record of a complaint from her."[23] Plaintiff alleges that when she asked Papasodora about this, he said "he 'had been meaning to get to it' but that he had not yet taken any action on [her] complaint."[24]

---

[19]Id. at 16, ¶ 60.

[20]Id. at 16-17, ¶¶ 61-62.

[21]Id. at 17, ¶ 62.

[22]Id. at 17, ¶ 63.

[23]Id. at 17, ¶¶ 63-64.

[24]Id. at 17-18, ¶ 65.

-4-

Plaintiff alleges that on May 24, 2018, Harvey "arrived at the NPD station" after "attending a meeting at which several Alaska Native women voiced their concerns about the NPD's failure to protect them from sexual assaults."[25] Plaintiff alleges that Harvey made some comments about the meeting and that based on his comments, she "felt intimidated and scared to know that Lt. Harvey harbored such animus against women who, like her, sought protection and accountability from the police department."[26] Plaintiff alleges that she "felt she could not work under the current circumstances and asked Chief Papasodora for temporary administrative leave while Lt. Harvey's failure to investigate her complaint was being investigated."[27] Plaintiff alleges that her request for leave was granted and that the leave "began on May 28, 2018."[28]

Plaintiff alleges that she began "seeing a counselor and a psychiatrist for the exacerbated trauma she suffered as a result of having her complaint not taken seriously by her superiors, including persistent nightmares, flashbacks, and panic attacks."[29] Plaintiff alleges that she "was diagnosed with severe post-traumatic stress disorder (PTSD)."[30]

---

[25]Id. at 19, ¶ 69.

[26]Id. at 19, ¶¶ 69-70.

[27]Id. at 19, ¶ 71.

[28]Id. at 19, ¶ 71.

[29]Id. at 20, ¶ 73.

[30]Id. at 20, ¶ 73.

-5-

Plaintiff alleges that she was eventually granted leave under the Family Medical Leave Act and the Alaska Family Leave Act but that as of October 6, 2018, she had exhausted all of this leave.[31]  Plaintiff alleges that the City of Nome thus terminated her employment on October 7, 2018.[32]

Plaintiff commenced this action on February 20, 2020.  Plaintiff's complaint contains six counts.  In Count I, plaintiff asserts a § 1983 equal protection claim.  In Count II, plaintiff asserts a state law equal protection claim.  In Count III, plaintiff asserts a state law discrimination claim pursuant to AS 18.80.255.  In Count IV, plaintiff asserts a state law hostile work environment claim and a state law constructive discharge claim.  In Count V, plaintiff asserts a breach of the implied covenant of good faith and fair dealing claim.  In Count VI, plaintiff asserts an intentional infliction of emotional distress claim.  All of these claims are asserted against Papasodora, who is being sued in his individual capacity.[33]

Pursuant to Rule 14, Federal Rules of Civil Procedure, Papasodora now moves for leave to file a third-party complaint against Donald Johnson for purposes of allocating fault.

Discussion

Rule 14(a)(1) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim

---

[31]Id. at 20, ¶ 75; 21, ¶ 77.

[32]Id. at 21, ¶ 77.

[33]Id. at 5, ¶ 11.

against it." "Thus, a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." Stewart v. Amer. Int'l Oil & Gas Co., 845 F.2d 196, 199 (9th Cir. 1988). The third-party claim "cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant. The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." Id. at 200 (citation omitted).

Papasodora argues that it would be proper to bring in Johnson as a third-party defendant as Johnson is someone to whom fault could be allocated because the alleged assault by Johnson is a predicate for plaintiff's damages. Courts in this district have held that Rule 14 is "the proper mechanism for bringing in additional defendants" for the purpose of allocating fault. DSV Air & Sea GmbH v. Bragg Investment Co., Case No. 3:06-cv-145 TMB, Case No. 3:06-cv-274 TMB (Consolidated), 2008 WL 11429565, at *4 (D. Alaska Jan. 22, 2008) (citing Robinson v. U-Haul Co., 785 F. Supp. 1378, 1379 (D. Alaska 1992)). Papasodora argues that "[i]f [p]laintiff presents cognizable evidence of her mid-March 2017 alleged rape by Donald Johnson and her subsequent trauma from having to take his call as a dispatcher in mid-March 2018, Defendant Papasodora must be able to apportion fault pursuant to Alaska Statute 09.17.080. . . ."[34] "Alaska Statute 09.17.080 provides for the

---

[34]Defendant Papasodora's . . . Motion for Leave to File a Third-Party Complaint [etc.] at 3, Docket No. 46.

apportionment of damages in actions involving the fault of more than one person[.]" L.D.G., Inc. v. Brown, 211 P.3d 1110, 1122 (Alaska 2009).

Papasodora has not shown that the requirements of Rule 14 have been met. The alleged assault by Johnson is not the predicate for the damages plaintiff seeks against Papasodora and the other defendants. Rather, the damages plaintiff seeks are based on defendants' failure to investigate her report of the assault, and not the assault itself. Any claim against Johnson would not be "dependent on the outcome of" plaintiff's claims against Papasodora and the other defendants. Stewart, 845 F.2d at 199.

Hay v. Somerset Area School District, Case No. 3:16-cv-229, 2017 WL 5029057 (W.D. Pa. Oct. 31, 2017), is illustrative. There, Hay alleged that the school district had "acted with deliberate indifference towards inappropriate sexual conduct by Stephen Shaffer, a former teacher, causing [her] to be sexually abused while she was a student." Id. at *1. The court had given the school district leave to file a third-party complaint against Shaffer, and Shaffer moved to dismiss that complaint. Id. The school district had asserted a claim for contribution against Shaffer in the third-party complaint and the question before the court was whether the school district had "sufficiently pled facts plausibly giving rise to contribution under Pennsylvania law[.]" Id. at *5. "'Contribution in Pennsylvania is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act" (the "Act").'" Id. (quoting Smerdon v. GEICO Cas. Co., No. 4:16-CV-02122, 2017 WL 2506421, at *4 (M.D. Pa. 2017)). "Under the Act, a claim for contribution is only proper if it arises between

-8-

joint tortfeasors." Id. "The Act defines 'joint tortfeasors' as 'two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.'" Id. (quoting 42 Pa. Stat. and Cons. Stat. Ann. § 8322) (emphasis omitted). The court found that the school district had "fail[ed] to state a claim for contribution under Pennsylvania law because it has not alleged facts plausibly supporting its contention that Shaffer and SASD were joint tortfeasors." Id. Hay's "claims concern (1) SASD's alleged deliberate indifference to [her] constitutional right of bodily integrity (the § 1983 claim) and (2) SASD's subjecting [her] to a sexually hostile education environment (the Title IX claim). Plaintiff seeks redress for SASD's policies, procedures, and protocols—not for Shaffer's misconduct." Id. The court further explained that Hay's "injury is not 'single' or 'indivisible;' the injuries inflicted by Shaffer—sexual assault and sexual harassment—are separate and distinct from the injuries allegedly inflicted by" the school district. Id. at *6.

The same is true here. The injury inflicted by Johnson, the sexual assault itself, is separate and distinct from the injury allegedly inflicted by Papasodora, the failure to investigate.

Papasodora's argument that Hay has no relevance fails. Papasodora argues that Hay is irrelevant because it involved Pennsylvania's Uniform Contribution Act, not AS 09.17.080, which governs allocation of fault in Alaska. But, AS 09.17.080 has no application here. "To apportion fault to a party under AS 09.17.080, that party's conduct

must be a legal cause of the plaintiff's harm.  Thus, legal causation is a prerequisite for allocation of fault to [Johnson]." Ennen v. Integon Indem. Corp., 268 P.3d 277, 289 (Alaska 2012).  "[N]egligent conduct may properly be found to be a legal cause of a plaintiff's injury if the negligent act was more likely than not a substantial factor in bringing about (the) injury." State, Dep't of Corrections v. Cowles, 151 P.3d 353, 365 (Alaska 2006) (citation omitted).  "The substantial factor test is satisfied by showing both that the [injury] would not have happened but for the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it.'" Id. (citations omitted).  Johnson's conduct could not be the legal cause of the harm that is alleged in this case because his actions did not contribute to the harm caused by Papasodora's inaction after plaintiff reported the assault.

This case is similar to Carreira v. Duvall, Case No. 3:12–cv–00138–SLG, 2013 WL 1683690 (D. Alaska April 16, 2013).  There, Ms. Carreira had surgery performed by Dr. Cranfield and the Carreiras "allege[d] that Dr. Cranfield performed the surgery in a reckless and negligent manner that fell below the applicable standard of care in many respects." Id. at *1 (citation omitted).  "The Carreiras contacted the Law Office of Azar and Schlehofer, P.C. for legal advice regarding the surgery" and they "assert[ed] that the case was assigned to Ms. Duvall who worked under the supervision of Mr. Azar." Id.  After the Carreiras' federal lawsuit was dismissed, in large part due to a failure to exhaust administrative remedies and a statute of limitations problem, "[t]he Carreiras filed . . . suit against Ms.

Duvall and Mr. Azar. . . ."  Id.  "Ms. Duvall filed an Answer as well as a Third–Party

Complaint seeking to apportion fault to Dr. Cranfield. . . ."  Id.   Dr. Cranfield moved to

dismiss the third-party complaint, and the court granted his motion.  Id. at *2.  The court

explained that

> [t]o apportion fault to a party under AS 09.17.080, that party's
> conduct must be a legal cause of the plaintiff's harm.  In this
> action, the Carreiras seek damages based on the alleged harms
> they incurred when Mr. Azar and Ms. Duvall failed to timely
> file a lawsuit and failed to properly investigate their potential
> claims.   The specific harm that the Carreiras incurred that
> underlies their lawsuit against Ms. Duvall and Mr. Azar is their
> inability to recover any damages from Dr. Cranfield.  Had the
> attorneys pursued the medical malpractice claim in a timely
> manner, then the Carreiras would not have suffered that
> particular harm, as they could have been made whole as a result
> of that medical malpractice claim.  The medical care that Dr.
> Cranfield provided is not a legal cause of this specific harm.

Id. (citation omitted).

Similarly here, the sexual assault by Johnson was not the legal cause of the harm

plaintiff suffered as result of Papasodora's failure to investigate her report of sexual assault.

Had plaintiff's report been properly investigated, she would not have suffered the harm

alleged in this action.  Quite simply, Johnson did not "contribute[] in some manner" to

Papasodora's failure to investigate.  Id. at *2.

Papasodora's argument to the contrary is unavailing.  Papasodora argues that Johnson

did contribute to the harm plaintiff is claiming in this case because she has alleged that her

trauma was "exacerbated . . . as a result of having her complaint not taken seriously by her

-11-

superiors[.]"[35]    This allegation implies that plaintiff's trauma was initially a result of

Johnson's conduct.  Papasodora argues that this means he should be able to review plaintiff's

treatment records and depose her providers to determine all the causes of her trauma, and he

seems to suggest that he could only do this if Johnson were brought into this case as a third-

party defendant.  Papasodora contends that it is likely that some of plaintiff's trauma was

caused by the alleged sexual assault itself and thus the assault itself must be evaluated by a

trier-of-fact under AS 09.17.080.

But Johnson's liability is in no "way dependent on the outcome of the main" claims

in this case.  Stewart, 845 F.2d at 199.  Johnson could be liable to plaintiff even if

Papasodora did not fail to investigate the assault.  Likewise, Papasodora could be liable for

failure to investigate even if Johnson did not actually assault plaintiff.

Papasodora's argument is largely based on the fact that plaintiff has alleged that her

trauma was exacerbated by the failure to investigation.  He contends that he should be able

to delve into the reason why she was traumatized to begin with.  While he may be correct on

that point, Johnson does not have to be a defendant in order for Papasodora to discover

plaintiff's medical records or depose her providers.  Plaintiff is alleging that her emotional

distress claim was exacerbated by the failure to investigate her report of a sexual assault.

Such an injury is separate and distinct from the trauma that she experienced as a result of the

assault itself.

---

[35]Complaint [etc.] at 20, ¶ 73, Docket No. 1 (emphasis added).

-12-

But even if the requirements of Rule 14 and AS 09.17.080 were met, the court would still deny Papasodora's motion. "The decision whether to implead a third-party defendant is addressed to the sound discretion of the trial court." Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir. 1986). "It is not an abuse of discretion to deny an application for impleader where it will disadvantage the existing action." Id. An "impleader [may] 'disadvantage the existing action' by, among other things, complicating and lengthening the trial, or introducing extraneous questions." Helferich Patent Licensing, LLC v. Legacy Partners, LLC, 917 F. Supp. 2d 985, 988 (D. Ariz. 2013) (quoting Southwest Administrators, 791 F.2d at 777). The court should also consider whether the impleader will cause "prejudice to the original plaintiff[.]" Irwin v. Mascott, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000) (citation omitted).

A third-party complaint against Johnson would cause confusion, introduce extraneous questions, and lengthen the proceedings. In order for Johnson to be held liable, there would have to be a showing that he committed the sexual assault that plaintiff reported. But, as the case now stands, there would be no such requirement because plaintiff's claims do not require her to prove that she was actually sexually assaulted, only that she reported an assault that defendants failed to investigate. In order to prevail on her claims, which include a § 1983 claim and state law tort claims, plaintiff will have to prove that defendants' policies and procedures for investigating sexually assaults were flawed and that defendants failed to adequately respond to her report. But, she will not have to prove that she was actually

-13-

assaulted.  Adding Johnson as a third-party defendant would change the focus of this case

from whether plaintiff's civil rights were violated after she reported a sexual assault to the

question of whether the assault occurred, which is an extraneous question.  If the issue of

Johnson's liability for sexual assault were added to this case, it is also possible that plaintiff

would be prejudiced as she might never be able to prove that Johnson actually assaulted her

because evidence may have been lost due to defendants' alleged failure to investigate.

Conclusion

Papasodora's motion for leave to file a third-party complaint[36] is denied.

DATED at Anchorage, Alaska, this 10th day of November, 2020.

/s/ H. Russel Holland
United States District Judge

---

[36]Docket No. 46.