IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CLARICE LEOTA HARDY,        )
                                   )
                Plaintiff,    )
                                   )
      vs.                           )
                                   )
CITY OF NOME, et al.,        )
                                 )     No. 2:20-cv-0001-HRH
             Defendants.  )
_____)

O R D E R

Motion to Compel

Plaintiff moves to compel defendant the City of Nome to respond to her discovery requests.[1]  This motion is opposed.[2]  Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Clarice Leota Hardy.  In addition to the City of Nome, the other defendants in this matter are Nicholas Harvey, who is alleged to have been "a Lieutenant with the NPD"

_____

[1]Docket No. 64.

[2]Docket No. 66.

-1-

during the relevant time,[3] and John Papasodora, who is alleged to have been the "Chief of Police of the NPD" during the relevant time.[4]

This case arises out of plaintiff's claims that the City of Nome and its police department ("the NPD") failed to investigate her allegations of sexual assault in 2017. Plaintiff has asserted state and federal equal protection claims against the City based on allegations that "[d]efendants failed to investigate [her] reported sexual assault because [she] is an Alaska Native and a woman" and that "[d]efendants' failure to investigate [her] reported sexual assault was part of a widespread practice that was so permanent and well settled that it constituted a custom or practice of the NPD[.]"[5]

Plaintiff served her First Discovery Requests on the City of Nome on November 30, 2020.[6]  Plaintiff contends that the City of Nome has failed to produce documents and information that pertain to the following seven categories:

> (1) audits conducted by (or commissioned by) the City of Nome of practices at issue here; (2) information that the City claims is contained in "confidential personnel records"; (3) emails sent between the two individual defendants, Nicholas Harvey and John Papasodora; (4) Defendants' efforts to determine why Lt. Harvey failed to investigate Plaintiff Hardy's allegations of

---

[3]Complaint for Declaratory and Injunctive Relief and for Damages at 5, ¶ 12, Docket No. 1.

[4]Id. at ¶ 11.

[5]Id. at 22, ¶¶ 83-84.

[6]Exhibit 1 at 22, Motion to Compel Defendant City of Nome's Discovery Responses, Docket No. 64.

sexual assault; (5) communications between the City of Nome and NPD regarding sexual assault allegations made by women other than Plaintiff Hardy; (6) comparative information about how NPD treated non-sexual assaults; and (7) Defendants' training.[7]

Plaintiff now moves to compel the City of Nome to produce documents and information as they pertain to the foregoing seven categories.

<u>Discussion</u>

"Pursuant to Rule 37(a)(3)(B)(iv), '[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection' if 'a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.'" <u>Renfrow v. Redwood Fire and Cas. Ins. Co.</u>, 288 F.R.D. 514, 521 (D. Nev. 2013) (quoting Fed. R. Civ. P. 37(a)(3)(B)(iv)). "Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are 'relevant to any party's claim or defense . . .' or, for good cause shown, 'relevant to the subject matter involved in the action.'" <u>Id.</u> (quoting Fed. R. Civ. P. 26(b)). "For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> However, "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." <u>In re: Bard IVC Filters Products Liability Litig.</u>, 317 F.R.D. 562, 564 (D. Ariz. 2016). Rule 26(b)(1) provides

---

[7]Motion to Compel Defendant City of Nome's Discovery Responses at 12, Docket No. 64.

-3-

that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." O'Donnell v. TD Ameritrade, Inc., 250 F.R.D. 502, 503 (S.D. Cal. 2008) (citation omitted). "In turn, the party opposing discovery has the burden of showing that discovery should not be allowed." Id. (citations omitted). "[A] party may not respond to a request for production or an interrogatory by providing vague references to documents. Rather, a party must adequately and precisely specif[y] . . . the actual documents where information will be found[. V]ague references to documents do not suffice." Becker v. Kikiktagruk Inupiat Corp., Case No. 3:09-cv-00015-TMB, 2009 WL 10705060, at *2 (D. Alaska Oct. 20, 2009) (citations omitted). Finally, although "[t]he Federal Rules of Civil Procedure favor liberal discovery[,]" South Peninsula Hospital, Inc. v. Xerox State Healthcare, LLC, Case No. 3:15-cv-000177-TMB, 2019 WL 1873297, at *3 (D. Alaska Feb. 5, 2019) (citation omitted), "'Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" United States ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 237 (S.D. Cal. 2015) (quoting Murphy v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1163 (10th Cir. 2010)).

audits conducted by (or commissioned by) the City of Nome

In Interrogatory No. 5, plaintiff asked the City to "identify each internal or external audit or review of NPD performance, conduct, or work conducted from 2007 to the present

-4-

and describe the subject of each audit or review[.]"[8] In RFP No. 12, plaintiff asked the City to "produce all documents relating to the audits or reviews identified in Interrogatory No. 5."[9] The City objected to these requests on the grounds that they were overbroad but did identify a 2018 review done by Police Consultant Paul D. Schultz and a September 19, 2019, memorandum sent by then Police Chief Estes "titled 'Public Safety One-year assessment' to Acting City Manager John Handeland."[10] The City also produced the documents associated with these two audits or reviews.[11] In addition, the City stated that the NPD "began a review of all sexual assault cases at the direction of then-Police Chief Robert Estes. The review was never completed and was stopped when Chief Estes left" the NPD.[12]

In the instant motion, plaintiff suggests that there are additional audits or reviews that the City has not identified. In response, the City contends that it "did not commission or complete an audit of the Nome Police Department regarding its handling of sexual assault investigations."[13] The City contends that the NPD "began to audit some of its prior sexual

---

[8]Plaintiff's First Discovery Requests to the City of Nome at 13, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[9]Id.

[10]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 9, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[11]Id.

[12]Id.

[13]Opposition to Plaintiff's Motion to Compel at 9, Docket No. 66.

assault investigations, but that audit focused on individual sexual assault investigations."[14] The City contends that this "process did not result in a written form of audit report to the City of Nome."[15] The City further contends that "Estes did report to the City of Nome the preliminary results of the audit of sexual assault investigations between 2015 and 2018, but there is not a report reflecting this audit which could be disclosed."[16] Thus, the City seems to be implying that it has produced all documents and information that would be responsive to these discovery requests.

The court is not convinced that the City has fully responded to these discovery requests. The City is compelled to produce any and all documents related to any audit or review of the NPD, regardless of whether the audit or review was completed and regardless of whether the audit or review was "commissioned" by the City. If it has already produced all such documents, the City shall confirm that there are no other responsive documents to be produced.

<u>information that the City claims is contained in "confidential personnel records"</u>

In Interrogatory No. 8, plaintiff asked the City to "describe in detail each and every reason why John Papasodora's employment with NPD ended."[17] In RFP No. 16, plaintiff

---

[14]<u>Id.</u>

[15]<u>Id.</u>

[16]<u>Id.</u>

[17]Plaintiff's First Discovery Requests to the City of Nome at 15, Exhibit 1, Motion to
(continued...)

asked the City to "produce all records pertaining to the reasons identified in Interrogatory No. 8."[18]  In RFP No. 20, plaintiff asked the City to "produce all documents pertaining to Robert Estes' resignation from the NPD."[19]  In RFP No. 23, plaintiff asked the City to "produce all records relating to the investigations or disciplinary or corrective measures" taken by Papasodora "to determine why Nicholas Harvey failed to open a file or otherwise conduct an investigation into [p]laintiff's report of sexual assault, and any disciplinary or corrective measures he took as a result of Harvey's failure."[20]  In RFP No. 24, plaintiff asked the City to "produce all records, including, but not limited to, email correspondence and memoranda, relating to Nicholas Harvey's demotion from Lieutenant to Sergeant."[21]  In RFP No. 25, plaintiff asked the City to "produce all records, including, but not limited to, email correspondence and memoranda, relating to Nicholas Harvey's separation from the NPD."[22] And, in RFP No. 26, plaintiff asked the City to "produce all records relating to . . . investigations, findings or conclusions" that "Papasodora undertook, after he learned that

---

[17](...continued)
Compel City of Nome's Discovery Responses, Docket No. 64.

[18]Id.

[19]Id. at 16.

[20]Id. at 19.

[21]Id.

[22]Id. at 20.

Nicholas Harvey had failed to investigate [plaintiff's] complaint, to determine whether Harvey had also failed to investigate other complaints of sexual assault[.]"[23]

The City objected to these requests on the grounds that they sought the production of confidential personal records.[24] However, the City now contends that it has produced the entirety of Harvey's and Papasodora's personnel files. Thus, the City argues that it has fully responded to Interrogatory Nos. 1 and 8 and RFP Nos. 16, 23, 24, 25, and 26.

Plaintiff, however, questions whether the City has fully responded to these discovery requests. For example, in RFP No. 24, plaintiff asked the City to produce documents related to Harvey's demotion to sergeant. Plaintiff contends that the City has produced two pages of discovery in response, a letter from Harvey to Papasodora and a personnel action form. Plaintiff argues that there has to be more documents related to Harvey's demotion than these two pages. Plaintiff bases this argument on discovery that she has received from Papasodora which included text messages between Papasodora and City Manager Tom Moran discussing Harvey's demotion.[25] These text messages indicate that Harvey's demotion was discussed at a town council meeting, and thus, plaintiff argues that there are likely records related to that meeting that the City has not produced.

---

[23]Id.

[24]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 11, 14, 18 and 19, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[25]Exhibit 2, Reply in Support of Motion to Compel, Docket No. 67.

Plaintiff has shown that the City may not have fully responded to Interrogatory Nos. 1 and 8 and RFP Nos. 16, 23, 24, 25, and 26 and thus the City is compelled to do so.  The City shall reexamine its responses to these discovery requests and produce any and all information and/or documents that would be responsive to these requests.  If the City continues to believe that some of the information and documents that would be responsive to these discovery requests is contained in confidential personnel files, it must properly invoke the "qualified privilege for official information," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990), which it has not done.

"Government personnel files are considered official information." Id. "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages.  If the latter is greater, the privilege bars discovery.  Id. at 1033-34.

However,

> [b]efore a court balances these interests, the party opposing disclosure must first make a substantial threshold showing that the official information privilege applies, by submitting "a declaration or affidavit . . . from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration."

Carr v. County of San Diego, Case No.19cv1139-JLS-MDD, 2020 WL 7074881, at *2 (S.D. Cal. Dec. 3, 2020) (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 669 (N.D. Cal. 1987)).

The declaration must include:

"(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; and (5) a projection of how much harm would be done to the threatened interests if disclosure were made."

Id. at *2-3 (quoting Kelly, 114 F.R.D. at 670). "If the court finds that a defendant's submissions do not meet the threshold burden, the court will order defendant to disclose the material. If the court finds that defendant has met the threshold requirements to invoke the official information privilege, then the court orders an in camera review of the documents at issue." Id. at *3 (internal citations omitted).

As for RFP No. 20, in which plaintiff sought documents related to Estes' resignation from the NPD, the City argues that plaintiff is not entitled to Estes' personnel file as he is not a party to this litigation and thus the confidentiality of his personnel file must be protected. But, as set out above, the City has not properly invoked the official information privilege. The City is compelled to either produce documents responsive to RFP No. 20 or properly invoke the official information privilege as to documents related to Estes' resignation from the NPD.

-10-

emails sent between Harvey and Papasodora

In RFP No. 10, plaintiff asked the City to "produce all emails or text messages between John Papasodora and Nicholas Harvey sent or received during Nicholas Harvey's employment with NPD."[26]  The City "object[ed] to this request because it is overly broad" and contended that "[p]laintiff is not entitled to production of all emails or text messages sent between Defendants Papasodora and Harvey during Defendant's Harvey's employment with the Nome Police Department."[27]

In the instant motion, plaintiff argues that the emails and text messages between Harvey and Papasodora are relevant because they are likely to contain derogatory comments made by Harvey regarding Alaska Native women, which would be evidence that could be used to demonstrate discriminatory animus.  Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987).  In response, the City does not argue that the emails or text messages are not relevant, but it does continue to argue that RFP No. 10 is overly broad.  The City points out that Papasodora was employed by the NPD from 2009 through 2018 and that Harvey was employed by the NPD from 2008 through 2018.  Yet, RFP No. 10 contains no time parameters.  The City argues that it should not be required to produce all emails spanning a ten-year period.  However, the City represents that it has produced all emails between

---

[26]Plaintiff's First Discovery Requests to the City of Nome at 12, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[27]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 7, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

Papasodora and Harvey that mention plaintiff and that it "is willing to produce additional emails based on reasonable search terms proposed by [p]laintiff."[28]

This request is overly broad as it covers a ten-year period and includes every email and text sent between Harvey and Papasodora, except apparently "emails [C]hief Papasodora sent to all staff regarding routine administrative matters."[29] Plaintiff and the City shall confer and agree upon reasonable search terms to limit the scope of this request to emails and texts that are likely to be relevant to plaintiff's claims against the City.

<u>defendants' efforts to determine why Lt. Harvey failed to investigate plaintiff's allegations of sexual assault</u>

In Interrogatory No. 14, plaintiff asked the City to "describe in detail any investigation John Papasodora undertook to determine why Nicholas Harvey failed to open a file or otherwise conduct an investigation into [p]laintiff's report of sexual assault, and any disciplinary or corrective measures he took as a result of Harvey's failures."[30] In RFP No. 23, plaintiff asked the City to produce "all records relating to the investigations or disciplinary or corrective measures referenced in Interrogatory No. 14."[31] In Interrogatory No. 15, plaintiff asked the City "to describe in detail any investigation John Papasodora

---

[28]Opposition to Plaintiff's Motion to Compel at 11, Docket No. 66.

[29]Exhibit 13 at 1, Motion to Compel Defendant City of Nome's Discovery Responses, Docket No. 64.

[30]Plaintiff's First Discovery Requests to the City of Nome at 19, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[31]<u>Id.</u>

-12-

undertook, after he learned that Nicholas Harvey had failed to investigate Ms. Hardy's complaint, to determine whether Harvey had also failed to investigate other complaints of sexual assault, and any findings or conclusions he made as a result of such investigations."[32] In RFP No. 26, plaintiff asked the City to "produce all records relating to the investigations, findings or conclusions referenced in Interrogatory No. 15."[33]

In response to these discovery requests, the City identified and produced a June 1, 2018 email; a June 5, 2018 email memorandum; a June 16, 2018 email; and an August 1, 2018 email.[34] Plaintiff argues that the City's response is inadequate and that there must be more than these four emails that are responsive to these requests. Plaintiff contends that "[i]f the City did not conduct any further investigation than what is portrayed in these [emails], it should say so."[35]

In its opposition to the instant motion, the City represents that it "does not have any additional information to disclose regarding Interrogatories 14 & 15."[36] Not surprising, plaintiff seems reluctant to accept the City's representation. But, plaintiff is reminded that

---

[32]Id. at 20.

[33]Id.

[34]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 7-8, 17-18, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[35]Motion to Compel Defendant City of Nome's Discovery Responses at 24, Docket No. 64.

[36]Opposition to Plaintiff's Motion to Compel at 11, Docket No. 66.

-13-

there are limits as to what can be accomplished through interrogatories and accompanying requests for production and that some uncertainties may exist even if the other party has fully responded to discovery requests. These uncertainties can then often be cleared up during depositions. That said, to ensure that the City has fully responded to these discovery requests, the City is compelled to reexamine its responses to these discovery requests and either produce any additional information and/or documents should such be located or confirm that there are no other additional information and/or documents which would be responsive to these requests.

<u>communications between the City and NPD regarding sexual assault allegations made by women other than plaintiff</u>

In Interrogatory No. 7, plaintiff asked the City to "identify with specificity every communication between John Papasodora and the City of Nome pertaining to Nicholas Harvey's investigations of sexual assault cases[.]"[37] In RFP No. 14, plaintiff asked the City to "produce all records relating to the communications referenced in Interrogatory No. 7."[38] In response, the City referred to the same four emails mentioned above.[39]

Plaintiff complains that the City's response is insufficient, incomplete and evasive. Plaintiff suggests that there must be telephone or in-person communications that have not

---

[37]Plaintiff's First Discovery Requests to the City of Nome at 14, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[38]<u>Id.</u>

[39]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 10, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

-14-

been identified that pertain to Harvey's investigation of other sexual assault cases. Plaintiff argues that the City must be ordered to fully respond to these requests.

In response to the instant motion, the City contends that it has produced all communications between it and Papasodora concerning plaintiff's alleged sexual assault. But, the City seems to acknowledge that there might be additional communications between the City and Papasodora in Papasodora's email account that would be responsive to this request, which the City contends it will search for "[i]f [p]laintiff were compelled to propose reasonable search terms" for that account.[40]

The City's production of only communications related to Harvey's investigation of plaintiff's sexual assault complaint is an insufficient response. That is not what plaintiff requested in these discovery requests. Rather, plaintiff asked for information and/or documents related to Harvey's investigation of any sexual assaults, not just those related to his investigation of her alleged assault. In order to more fully respond to these requests, the City does not need plaintiff to propose reasonable search terms. Plaintiff's request for information and documents related to Harvey's investigation of sexual assaults is specific enough to allow the City to search for responsive documents. The City is compelled to produce any and all information and/or documents that are responsive to Interrogatory No. 7 and RFP No. 14. However, to the extent that plaintiff expects the City to identify every

---

[40]Defendant City of Nome's Opposition to Motion to Compel at 12, Docket No. 66.

-15-

telephone conversation and every in-person conversation between Harvey and Papasodora regarding Harvey's investigations of sexual assaults, such an expectation is unrealistic. The City cannot possibly be aware of every conversation that might have occurred between Harvey and Papasodora as it is likely that there are not records of all the telephone and in-person conversations. This is a matter that can be explored during depositions. Of course, if there are records of telephone and in-person conversations between Harvey and Papasodora related to Harvey's investigations of sexual assaults, the City must produce those records.

<u>comparative information about how NPD treated non-sexual assaults</u>

In RFP No. 3, plaintiff asked the City to "produce all calls for service to NPD between 20[]12 and 2018 relating to alleged assault or alleged sexual assault."[41] The City objected to this discovery request on relevancy grounds.[42] The City contended that discovery related to "alleged assault[s]" is not relevant because "[p]laintiff's claims do not relate to non-sexual assaults."[43]

Plaintiff argues that the foregoing discovery is relevant to her equal protection claim because "[i]n order to decide this claim, the [c]ourt may need to compare how the City

---

[41]Plaintiff's First Discovery Requests to the City of Nome at 10, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[42]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 4, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[43]<u>Id.</u>

-16-

responded to sexual assault complaints made by Alaska Native women with how the City responded to one or more other categories of criminal complaints."[44] Plaintiff contends that she has decided to compare how the City responds to sexual assaults versus how it responds to all assaults. Thus, plaintiff argues that the discovery she has requested in RFP No. 3 is relevant.

Plaintiff seems to have lost sight of what her equal protection claim is about. She alleges that "defendants failed to investigate [her] reported sexual assault because [she] is an Alaska Native and a woman."[45] As plaintiff repeatedly points out, as part of an equal protection analysis, "it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). The similarly situated class to plaintiff's class, which is Alaska Native women who reported sexual assaults, would be non-Alaska Native women who reported sexual assaults, not men and women who reported any kind of assault. The City is not compelled to produce all calls for service to the NPD between 2012 and 2018 relating to assaults other than sexual assaults. Its production of all calls for service to the NPD between 2012 and 2018 relating to sexual assaults is a sufficient response.

_____

[44]Motion to Compel Defendant City of Nome's Discovery Responses at 26, Docket No. 64.

[45]Complaint for Declaratory and Injunctive Relief and for Damages at 22, ¶ 83, Docket No. 1.

<u>defendants' training</u>

In RFP No. 6, plaintiff asked the City to produce "all records documenting any training given to or received by any NPD staff regarding the investigation of sexual assaults, including the contents of such training."[46]  The City objected to this request as being overbroad because it did not include any time limitations and did not distinguish between sworn and non-sworn employees.[47]  The City also stated that "[t]o the extent that [p]laintiff seeks records of training received by sworn officers of the Nome Police Department between 2017 and 2018, the City of Nome is not in possession of any centralized training records of this type of training."[48]  The City declined "to review the individual personnel files of its employees to determine whether those files include documentation of sexual assault training attended on the grounds that request seeks confidential personnel records."[49]

In response to the instant motion, the City points out that it has produced the training records for Harvey and Papasodora and the NPD's Operating Procedures Manual and sexual assault investigation forms and resources.  The City contends that this is sufficient and that to require it to produce the training records as they pertain to sexual assault investigations for

---

[46]Plaintiff's First Discovery Requests to the City of Nome at 11, Exhibit 1, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[47]Defendant City of Nome's Response to Plaintiff's First Discovery Requests at 5, Exhibit 2, Motion to Compel City of Nome's Discovery Responses, Docket No. 64.

[48]<u>Id.</u>

[49]<u>Id.</u> at 5-6.

-18-

all law enforcement personnel employed by the NPD would require individualized review of the personnel records for each officer.  The City contends that this would be unduly burdensome and not proportional to plaintiff's claims.

RFP No. 6 is overly broad because it does not contain any time parameters.  However, it is not unduly burdensome.  The NPD is not a police force of hundreds or thousands.  That the City may have to do an individualized search of employee files does not mean that the City can avoid responding to this request, which seeks relevant information related to plaintiff's custom and practice claim.  Plaintiff is entitled to discover the training records as they pertain to sexual assault investigations for all law enforcement personnel for the time period of 2012 through 2018, and the City is compelled to produce these records.  If the City contends that this information would be confidential because it is found in personnel files, then the City must properly invoke the official information privilege.

Conclusion

Plaintiff's motion to compel is granted in part and denied in part.  The City is compelled to produce any and all documents related to any audit or review of the NPD, regardless of whether the audit or review was completed and regardless of whether the audit was "commissioned" by the City.  If it has already produced such documents, the City shall confirm that there are no other responsive documents to be produced.  The City is compelled to fully respond to Interrogatory Nos. 1 and 8 and RFP Nos. 16, 23, 24, 25, and 26.  The City is compelled to respond to RFP No. 20.  Plaintiff and the City shall confer and agree upon

-19-

reasonable search terms that will allow the City to more fully respond to RFP No. 10. The City is compelled to reexamine its responses to Interrogatory Nos. 14 and 15 and RFP Nos. 23 and 26 and produce either any additional information and/or documents that are located or confirm that there are no other additional information and/or documents which would be responsive to these requests. The City is compelled to more fully respond to Interrogatory No. 7 and RFP No. 14. The City is compelled to produce the training records as they pertain to sexual assault investigations for all law enforcement personnel for the time period of 2012 through 2018. Plaintiff's motion to compel is otherwise denied.

DATED at Anchorage, Alaska, this 19th day of July, 2021.

/s/ H. Russel Holland
United States District Judge

-20-